**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Nancy Ring,                              )    No.  CV-24-00630-PHX-SPL
                                         )
                    Plaintiff,           )
                                         )    **ORDER**
vs.                                      )
                                         )
City of Chandler, et al.,                )
                                         )
                    Defendants.          )
                                         )
_____  )

Before the Court is Defendants City of Chandler, et al.'s ("Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") (Doc. 29), Plaintiff's Response (Doc. 33), and Defendants' Reply (Doc. 34). The Court now rules as follows.

## I.    BACKGROUND

Plaintiff Nancy Ring ("Plaintiff") brings various claims against Defendants on behalf of herself and as the representative of her son's estate. Her son, decedent Richard Allyn Ring, Jr. ("Decedent"), died in an incident with City of Chandler police officers on March 29, 2023. (Doc. 27 at 4). Decedent suffered from mental illness and had recently used methamphetamine. (*Id.*). On the evening of March 29, 2023, he allegedly robbed an Ace Hardware Store, fled to a nearby residential area, and entered two residences. (*Id.* at 5). Several residents in the neighborhood called 911, and City of Chandler Police Officers Buchanan, Wagner, Figley, Deanda, and Prendergast arrived on the scene. (*Id.*). The officers surrounded the second residence, and Decedent entered the backyard with significant, self-inflicted injuries to his throat area and holding a long-bladed, bloodied

kitchen knife. (*Id.*). Decedent moved forward, either from falling due to his injuries or intentionally. (*Id.*). Officer Buchanan shot Decedent multiple times, and Officer Wagner tased Decedent. (Doc. 27 at 5). Plaintiff was unresponsive and died on scene. (*Id.*). The parties dispute what happened next: Plaintiff alleges that the officers failed to contact emergency medical responders and left Decedent's body outside for several hours (*Id.*), whereas Defendants allege that Officer Deanda called for paramedics within seconds of the shooting and Officer Wagner immediately ran to get medical gear to provide aid to Decedent before realizing Decedent did not have a pulse. (Doc. 29 at 4).

Plaintiff filed suit on March 22, 2024. (Doc. 1). Plaintiff filed her SAC on July 10, 2024, bringing various federal and state law claims against the City of Chandler, Officers Buchanan, Wagner, Figley, Deanda, and Prendergast (the "Officers") in their individual and official capacities, and Does 1–50. (Doc. 27). Plaintiff's claims include Count One – Excessive Force in Violation of the Fourth Amendment against the Officers; Count Two – Fourteenth Amendment Violation of Plaintiff's Civil Rights to a Familial Relationship against the Officers; Count Three – Negligent Wrongful Death in Violation of ARS § 12-611 against all Defendants; Count Four – Intentional Wrongful Death in Violation of ARS § 12-611 against all Defendants; Count Five – Negligence pursuant to ARS § 12-821.01(A) against all Defendants; and Count Six – Assault and Battery in Violation of ARS § 13-20 and ARS § 13-1203(A)(1) against all Defendants. (Doc. 27). On July 24, 2024, Defendants filed this Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). (Doc. 29). The Motion has been fully briefed. (Docs. 33, 34).

## II.    LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt. v. United Energy Grp.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not

stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III.    DISCUSSION

Defendants raise various arguments for the dismissal of Plaintiff's multiple causes of action. Additionally, Defendants move for the dismissal of all "John and Jane Doe" Defendants. (Doc. 29 at 16). Defendants seek to submit evidence outside the pleadings to support their claims. This Court will first determine whether it may consider the exhibits attached to Defendants' Motion before addressing Defendants' arguments that Plaintiff's SAC fails to state claims upon which relief may be granted and that the dismissal of all Doe Defendants is warranted.

### A. Evidence Outside the Pleadings

A threshold issue central to Defendants' arguments is whether Defendants can introduce extrinsic evidence at the Motion to Dismiss stage. Specifically, the evidence at issue includes: Exhibits 1–3, the Officers' body camera footage; Exhibit 4, the Medical Examiner Report; Exhibit 5, Plaintiff's Notice of Claim; Exhibit 6, the Application for Informal Appointment of Personal Representative; and Exhibit 7, the Registrar's Denial.

(Doc. 29-1).

Generally, a district court may not consider extrinsic evidence in determining the legal sufficiency of a complaint's allegations under a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "[I]f a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). Because Defendant failed to follow the Federal Rules of Civil Procedure or the Court's local rules for filing a Motion for Summary Judgment, the Court declines to convert the Motion to Dismiss into a Motion for Summary Judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(d) ("If on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56").

A court may consider outside evidence without converting the motion to a summary judgment motion under two circumstances. One, a court may take judicial notice of matters of public record in considering a 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Two, a court may consider evidence on which the complaint necessarily relies if its authenticity is uncontested under the incorporation by reference doctrine. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

A court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute." Fed. R. Evid. 201(b). The Ninth Circuit has held that "[c]ourts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'" *Ritchie*, 342 F.3d at 909 (citing *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953)). However, courts may not take judicial notice of facts that are in dispute or subject to varying interpretations. *See generally Sanz v. City of Vallejo*, 2:19-CV-02134-TLN-DB, 2021 WL 2682162, at *3 (E.D. Cal. June 30, 2021).

Under the incorporation by reference doctrine, courts may consider extrinsic evidence, including police body camera recordings, that the complaint necessarily relies upon, if the evidence's authenticity is not contested. *Lihosit v. Flam*, No. CV-15-01224-

PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17, 2016). The complaint must "refer extensively" to the extrinsic evidence or the evidence must form the basis of or be integral to plaintiff's claim in order to be admissible under the incorporation by reference doctrine. *Ritchie*, 342 F.3d at 907. Mere mention of the existence of a document is insufficient. *Id.* at 908. Other district courts in the Ninth Circuit have found it appropriate to consider evidence, such as body camera footage, when the "complaint necessarily relie[d] on the circumstances surrounding" the arrest and the plaintiff did not dispute the video's authenticity. *Lihosit*, 2016 WL 2865870, at *3; *see also Covert v. City of San Diego*, No. 15-CV-2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017) (considering footage that "reveals the circumstances surrounding Plaintiff's claims" and was undisputed by Plaintiff). However, if the extrinsic evidence "merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Khoja*, 899 F.3d at 1002. "Submitting documents not mentioned in the complaint to create a defense is nothing more than another way of disputing the factual allegations in the complaint," and deprives the plaintiff of the "opportunity to respond to the defendant's new version of the facts." *Id.* at 1003.

### i.    Exhibits 1-3: Police Body Camera Footage

Exhibits 1–3 consist of Officers Buchanan, Deana, and Prendergast's body camera footage of the incident. While courts may consider police body camera footage as matters of public record, such consideration is only appropriate if the evidence is not in dispute. *Muhaymin v. City of Phoenix*, No. CV-17-04565-PHX-SMB, 2019 WL 699170, at *3 (D. Ariz. Feb. 20, 2019). Here, Plaintiff has not had the opportunity to review the footage and thus the authenticity of the footage is still up to dispute. (Doc. 33 at 4). As such, it is inappropriate for this Court to take judicial notice of Exhibits 1–3.

Additionally, in the present case, Plaintiff's SAC does not refer to or rely upon the body camera footage. The Complaint arguably necessarily relies on the circumstances surrounding the incident captured in the footage. However, as noted, Plaintiff asserts that she has not had the opportunity to review the evidence and disputes its introduction at this

stage. (Doc. 33 at 4). Moreover, Defendants submission of the body camera footage exhibits aims to create a defense to and refute Plaintiff's allegations without giving Plaintiff a sufficient opportunity to respond to the Defendants' proposed version of facts. Therefore, the Court declines to incorporate by reference Exhibits 1–3.

### ii.    Exhibit 4: Medical Examiner's Autopsy Report

Exhibit 4 is the Medical Examiner's Autopsy Report. Plaintiff's SAC does not reference or necessarily rely upon the report, so incorporation by reference is inappropriate. Although a public record, Plaintiff appears to contest the validity or interpretation of the facts included in the Autopsy Report in her Response. (Doc. 33 at 10). Thus, the Court finds it inappropriate to consider the report at the Motion to Dismiss stage.

### iii.    Exhibit 5: Notice of Claim

Defendants' proposed Exhibit 5 is the Notice of Claim Plaintiff submitted to the City of Chandler Board of Supervisors in accordance with administrative requirements under Arizona law. Plaintiff references the document in the SAC, and the document is a public record. (Doc. 33 at 4). As a plaintiff must file a Notice of Claim before bringing suit against public employees under A.R.S. § 12-821.01(A), Plaintiff's Notice is integral to her state law claims. Moreover, Plaintiff created the document, and thus, there is no dispute of its authenticity. The facts of the Notice that Defendants seek to submit—namely, which parties Plaintiff identified and addressed in the Notice—are indisputable. Courts in this District have found it appropriate to consider Notices of Claim at the motion to dismiss stage. *See Stuart v. City of Scottsdale*, No. CV-17-01848-PHX-DJH, 2018 WL 11590045, at *11 (D. Ariz. Sept. 27, 2018) (considering Notice of Claim at motion to dismiss stage). The Court finds it appropriate to take judicial notice of Exhibit 5.

### iv.    Exhibits 6 and 7: Public Filings of Decedent's Estate

Exhibit 6 is Plaintiff's Application for Informal Appointment of Personal Representative of Decedent. (Doc. 29-2 at 16). Exhibit 7 is the Probate Registrar's Denial of Plaintiff's Application due to application deficiencies. (*Id.* at 21). Defendants seek to submit these exhibits as proof that Plaintiff is not the personal representative of Decedent's

estate. (Doc. 29 at 7). Plaintiff's SAC does not mention or rely upon either document, so incorporation by reference is inappropriate. However, Plaintiff's SAC fails to allege that she is the personal representative of Decedent's estate as necessary to have standing to bring claims on his behalf. Defendants acknowledge that Plaintiff has since obtained standing as the personal representative of Decedent's estate but argue that Plaintiff still must take leave to amend to properly assert standing in her claim. (Doc. 34 at 3). As Exhibits 6 and 7 pertain to the issue of Plaintiff's status as Decedent's estate representative—an issue that has been resolved since the filing of the present Motion—the Court declines to consider whether these exhibits are appropriate for consideration at the Motion to Dismiss stage.

### B. Count One – Excessive Force in Violation of the Fourth Amendment

Plaintiff alleges that Defendant Officers and Does 1–50's excessive force violated Decedent's Fourth Amendment rights under 42 U.S.C. § 1983. (Doc. 27 at 7). Defendants propose two arguments for the dismissal of the excessive force claim: (1) Plaintiff is not the personal representative of Decedent and therefore cannot bring a Fourth Amendment claim on behalf of Decedent; and (2) alternatively, that Defendants Figley, Deanda, Prendergast, and Wagner (the "non-shooting officers") cannot be liable for Excessive Force in violation of the Decedent's Fourth Amendment rights. (Doc. 29 at 7–8).

With respect to the first argument, Plaintiff failed to plea in the SAC that she was the personal representative of Decedent's estate, as required to bring a Fourth Amendment claim on behalf of a decedent. *See Longoria v. Pinal Cnty.*, 873 F.3d 699, 711 (9th Cir. 2017) ("Only [decedent's] estate may bring a § 1983 for the violation of his Fourth Amendment rights; his family members have no standing to sue on their own behalves."). Defendants acknowledge that since the filing of the Motion, Plaintiff has obtained standing through appointment as the personal representative of Decedent's estate. (Doc. 34 at 3). As such, the Court will grant Defendants' Motion with respect to the Fourth Amendment claim against all Defendants and grant Plaintiff leave to amend to properly assert standing against the Defendants.

Because Plaintiff's standing deficiency appears to be easily remedied with leave to amend, the Court finds it appropriate to address Defendants' arguments that Plaintiff's claims against the non-shooting officers fail to meet the requirements of Rule 8. Regarding the non-shooting officers, to allege a claim that a police officer's excessive force violated an individual's Fourth Amendment rights, a plaintiff must show that the officer used force that was not objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Defendants argue that Plaintiff has not alleged a plausible excessive force claim against Defendants Figley, Deanda, and Prendergast because they did not use any force at all or against Defendant Wagner, because Defendant Wagner's use of the taser against Decedent did not cause his death. (Doc. 29 at 7–8). Plaintiff argues that the non-shooting officers should be held liable as integral participants and for failing to intervene, and in the case of Defendant Wagner, as an integral participant. (Doc. 33 at 5–6).

### i.    Integral Participant

Under the integral participant theory, officers may be liable under § 1983 even if they did not directly engage in unconstitutional conduct if they are fundamentally involved in the conduct that allegedly caused the violation. *Monteilh v. Cnty. of Los Angeles*, 820 F. Supp. 2d 1081, 1089 (C.D. Cal. 2011) (citing *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002)). "Officers are fundamentally involved in the alleged violation when they provide some affirmative physical support . . . and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Monteilh*, 820 F. Supp. 2d at 1089. Alternatively, an officer may be an integral participant if he sets in motion a sequence of events that gives rise to a constitutional violation when the violation is a foreseeable consequence of his decision. *Nicholson v. City of Los Angeles*, 935 F.3d 685, 691–92 (9th Cir. 2019). All told, "simply being present at the scene does not demonstrate that an officer has acted as part of a common plan." *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir. 2022). Rather, an officer must participate in the planning or the execution of the unconstitutional conduct to constitute an integral participant. *Id.*

In the present case, Plaintiff's SAC does not allege facts that plausibly support a

claim that the non-shooting officers were integral participants in the alleged Fourth Amendment violation. The SAC does not propose that the non-shooting officers were aware of a plan to allegedly commit excessive force or set in motion the series of events that led to Decedent's death. *See Peck*, 51 F.4th at 891–92 (finding no integral participation when the shooting was unplanned, and officers had no reason to know that providing armed backup would result in an unconstitutional shooting). Even in the case of Defendant Wagner, whose use of the taser could potentially constitute affirmative physical support, the SAC fails to allege that Defendant Wagner knew or should have known of some common plan to engage in unconstitutional conduct. Thus, the Court finds that Plaintiff does not allege a plausible claim that the non-shooting officers are liable as integral participants in the alleged Fourth Amendment violation.

### ii.    Failure to Intervene

Under the failure to intervene theory, "police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (quotation omitted). "If an officer fails to intervene when fellow officers use excessive force, despite not acting to apply the force, he would be responsible for violating the Fourth Amendment." *Garlick v. Cnty. of Kern,* 167 F. Supp. 3d 1117, 1161 (E.D. Cal. 2016). However, "officers can be held liable for failing to intercede only if they had an opportunity to intercede." *Cunningham*, 229 F.3d at 1289. To that end, "such a duty is not triggered by an officer's mere presence at the scene of the constitutional violation." *Viehmeyer v. City of Santa Ana*, 67 F. App'x 470, 473 (9th Cir. 2003).

Here, Plaintiff alleges that the non-shooting officers surrounded the second residence Decedent entered. (Doc. 27 at 5). Plaintiff's alleged facts show that Decedent specifically encountered Defendants Buchanan and Wagner, who shot and tased Decedent, respectively, before he died. (*Id.*). Plaintiff's facts do not allege that Defendants Deanda, Figley, or Prendergast were even in the backyard or that the non-shooting officers, including Defendant Wagner, were near Defendant Buchanan such that they could have

physically intervened. *See Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) ("[T]he agents were positioned around the room away from [the shooting officer and victim] and were thus physically incapable of preventing the incidents surrounding the shooting, all of which transpired in a matter of seconds. Therefore, it cannot be said that the agents' failure to intervene was the cause in fact of [the victim's] injuries."). Moreover, the SAC does not provide facts that any of the non-shooting officers had the opportunity to know of and intervene with Defendant Buchanan's decision to shoot Decedent. *See id*. (finding no failure to intervene when there was no evidence the non-shooting agents knew the shooting officer would hurt or shoot the plaintiff). Thus, Plaintiff has not plausibly alleged that the non-shooting officers failed to intervene.

In sum, Plaintiff has not alleged facts that, taken as true, support a claim that the non-shooting officers violated Decedent's Fourth Amendment rights as integral participants or by failing to intervene. The Court will grant Defendants' Motion to Dismiss Count One with respect to Defendants Deana, Figley, Prendergast, and Wagner without prejudice and grant Plaintiff leave to amend.

### C. Count Two – Fourteenth Amendment Violation of Familial Relationship

Defendants argue that Plaintiff's claim that the Officers violated her Fourteenth Amendment interest in the companionship of her child must be dismissed, as the non-shooting officers did not deprive Plaintiff of her familial relationship and Defendant Buchanan acted with a legitimate law enforcement purpose. (Doc. 29 at 9). Plaintiff counters that the non-shooting officers acted with deliberate indifference in failing to intervene and that Defendant Buchanan lacked a legitimate law enforcement purpose in shooting Decedent. (Doc. 33 at 6–7).

The Ninth Circuit recognizes that parents have a Fourteenth Amendment interest in the companionship of their children. *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991). In order for official conduct to violate a parent's due process rights, the conduct must "shock the conscience." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Courts consider the facts of the case in order to determine if an officer's conduct meets the

"shocks the conscience" standard. *Id.* In urgent, emergency situations that necessitate fast action and involve competing public safety obligations, a plaintiff must show that an official acted with a "purpose to harm" for reasons other than legitimate law enforcement objectives to meet the "shocks the conscience" standard. *Id.* at 1137–39; *see also Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (finding purpose to harm standard appropriate when police responded to a gunfight in a large crowd because it was an extreme emergency); *Peck*, 51 F.4th at 893 ("We apply the purpose-to-harm standard when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect."). Alternatively, an official's "deliberate indifference" may violate a parent's Fourteenth Amendment rights under certain circumstances. *Porter*, 546 F.3d at 1137. For instance, deliberate indifference may rise to the level of shocking the conscience in situations where officers had extended opportunities for actual deliberation and still engaged in unconstitutional conduct. *Id.* at 1137–39. This standard is appropriate "when officials had 'ample time to correct their obviously [wrongful conduct],' such as in Eighth Amendment prisoner-treatment cases or in wrongful-detention cases." *Peck*, 51 F.4th at 893 (citing *Porter*, 546 F.3d at 1139).

In the present case, the Court finds that the purpose to harm, rather than deliberate indifference, standard is appropriate. Plaintiff's SAC alleges facts that indicate the incident was an urgent, dangerous emergency: several calls were made to 911 regarding Decedent allegedly stealing from a nearby Ace Hardware store, fleeing and jumping various fences in a nearby residential area, and entering two homes, and Defendant confronted the Officers with a long blade knife in hand. (Doc. 27 at 5). The alleged facts show that Decedent was armed and non-responsive to the Officers' commands for Decedent to drop the knife before engaging in a forward motion. (*Id.*). While the SAC does not specify the length of the incident, the facts demonstrate a situation in which the Officers were required to make multiple fast decisions on how to best respond to risk posed by an armed, potentially dangerous suspect. *See Peck*, 51 F.4th at 894 ("Once the deputies identified the gun, they

were required to develop a concrete tactical response quickly, making repeated snap judgments and assessing [defendant's] every move. In such a fast-paced environment, deliberate action within the meaning of our cases was not possible."). The SAC does not allege that the Officers had ample time to contemplate their conduct, and this case is not akin to the kind of prison custodial situations that have utilized the deliberate indifference standard. *See generally Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 851–52 (1998) ("But just as the description of the custodial prison situation shows how deliberate indifference can rise to a constitutionally shocking level, so too does it suggest why indifference may well not be enough for liability in the different circumstances of [a high-speed auto chase]."). Because a deliberate indifference review is not appropriate under the circumstances of this case, Plaintiff's argument that the non-shooting officers violated Plaintiff's Fourteenth Amendment rights by acting with deliberate indifference in failing to intervene fails to state a claim upon which relief may be granted. Therefore, Defendants' Motion to Dismiss Count Two with respect to Defendants Deanda, Figley, Prendergast, and Wagner is granted. Because no new facts could remedy this claim against the non-shooting officers, the Court finds that leave to amend Count Two against Defendants Deanda, Figley, Prendergast, and Wagner is inappropriate.

Under the purpose to harm standard, a plaintiff must show that a defendant acted with a purpose to harm that was unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137. Conduct such as purely reactive decision-making or responding to an emergency weighs against a purpose to harm finding. *See id.* at 1140. Instead, a plaintiff must show that an officer's intention was "to cause harm unrelated to the legitimate object of arrest," "induce . . . lawlessness, or to terrorize, cause harm, or kill," or to "teach [the suspect] a lesson" or "get even." *Id.* (citations omitted). Absent evidence of such intentions or evidence that an "officer's reaction was driven by anything other than his 'instinct … to do his job as a law enforcement officer,'" an officer will escape liability under the purpose to harm standard, even if the officer misperceived danger or acted irresponsibly. *Bingue v. Prunchak*, 512 F.3d 1169, 1174 (9th Cir. 2008) (citing *Lewis*, 523 U.S. at 855).

Plaintiff's SAC alleges that Defendant Buchanan shot Decedent "for no legitimate law enforcement reason." (Doc. 27 at 9). The SAC continues to allege that Defendant Buchanan "acted maliciously with a purpose to harm Decedent Ring unrelated to legitimate law enforcement purposes because Ring was collapsing from his own self-inflicted knife wounds." (*Id.*). The Court finds these allegations are conclusory and do not include facts sufficient to support a finding that Defendant Buchanan acted with a purpose to harm that was unrelated to his attempt and instinct to do his job. *See Coleman v. Las Vegas Metro. Police Dep't*, No. 21-16269, 2022 WL 3594272, at *1 (9th Cir. 2022) ("Plaintiffs' failure to assert non-conclusory allegations regarding Officer Peacock's intent to harm is fatal to their 42 U.S.C. § 1983 substantive due process claim."). In sum, Plaintiff's SAC does not plausibly allege that Plaintiff is entitled to relief on her Fourteenth Amendment claim against Officer Buchanan, and thus, dismissal of Count Two against Officer Buchanan is warranted. However, because new facts could remedy Plaintiff's conclusory allegations, the Court finds that leave to amend is appropriate.

### D. Counts Three–Six – State Law Claims

Plaintiff brings various state law claims against the Defendants. Plaintiff brings two claims—Negligent Wrongful Death and Intentional Wrongful Death—against all Defendants under A.R.S. § 12-611. (Doc. 27 at 9–10). Additionally, Plaintiff alleges all Defendants are liable for "Negligence." (*Id.* at 11–12). Lastly, Plaintiff alleges all Defendants are liable for Assault and Battery in violation of A.R.S. §§ 13-20 and 13-203(a)(1). With respect to Defendant City of Chandler ("Defendant Chandler"), Plaintiff alleges it is vicariously liable for the Officers' actions under A.R.S. § 12-821.01(A).

Defendants argue that Plaintiff's state law claims against the Officers fail because she did not timely serve her Notice of Claim on the individual officers as required by A.R.S. § 12-821.01(A). (Doc. 29 at 11). If the alleged deficiencies in Plaintiff's Notice of Claim do not doom Plaintiff's state law claims, Defendants argue that the claims fail on the merits or are otherwise not viable causes of action. (*Id.* at 12). Lastly, Defendants argue that Defendant Chandler cannot be held vicariously liable for the Officers' actions because

A.R.S. § 12-820.05(B) immunizes public entities from vicarious liability unless the entity knew of its employee's propensity for the criminal action. (*Id.* at 15).

### i.    Notice of Claim

In Arizona, a state law claim against a public employee is barred unless a notice of claim is filed within 180 days of the claim's accrual. A.R.S. § 12-821.01(A). "A claimant who asserts that a public employee's conduct giving rise to a claim for damages was committed within the course and scope of employment must give notice of the claim to both the employee individually and to his employer." *Crick v. City of Globe*, 606 F. Supp. 3d 912, 916 (D. Ariz. 2022) (citations omitted). "[A] party seeking to sue a government employee must personally serve the employee with the [Notice of Claim]—service upon the City Clerk, or the receptionist at the office where the government employee happens to work, is insufficient." *Andrich v. Kostas*, No. CV-19-02212-PHX-DWL, 2020 WL 377093, at *6 (D. Ariz. Jan. 23, 2020). "Actual notice and substantial compliance do not excuse failure to comply with the statutory requirements of A.R.S. § 12-821.01(A)." *Falcon v. Maricopa Cnty.*, 144 P.3d 1254, 1256 (Ariz. Ct. App. 2006).

Plaintiff's SAC provides that "Plaintiff submitted a claim to the Board of Supervisors for the City of Chandler." (Doc. 27 at 4). Defendants argue in their Motion to Dismiss that Plaintiff's failure to serve any of the individual Defendants within 180 days of the incident dooms Plaintiff's state law claims. (Doc. 29 at 11). Plaintiff counters that at the time Plaintiff timely served her claim notice on the City of Chandler, Plaintiff did not have all the names of the officers involved and can substitute Defendant "Does" with individual officer names to sustain the state law claims. (Doc. 33 at 8). As Plaintiff's Notice of Claim only addressed the "City of Chandler," rather than any unknown officers or Defendant "Does," it is unclear how Plaintiff intended to substitute identified officers in the Notice of Claim. (Doc. 29-2 at 13). In any event, courts have found that a failure to individually serve public employees does not comply with A.R.S. § 12-821.01(A), even if the plaintiff discussed the employees' conduct in a Notice identifying the city as an employee or failed to serve individuals because their identities were undisclosed. *See*

*Adame v. City of Surprise*, No. CV-17-03200-PHX-GMS, 2018 WL 3209388, at *5 (D. Ariz. June 29, 2018) (dismissing claim against officer when the notice was not addressed to or served upon officer nor identified him as a party, despite reciting the officer's alleged misconduct); *Bustamante v. Gonzalez*, No. CV07-0940PHX-DGC JRI, 2010 WL 396361, at *10 (D. Ariz. Jan. 29, 2010) (dismissing claims because plaintiff failed to individually serve officers whose identities were undisclosed at time of filing); *Baker v. City of Tempe*, No. CV 07-1553-PHX-MHM, 2008 WL 2277882, at *3 (D. Ariz. May 30, 2008) (dismissing claims against officers when notice failed to name them because "the Notice would not have enabled them to know that they were potential litigants, nor the nature of the claims against them as individuals").

Here, Plaintiff failed to properly serve or give timely notice—indeed, Plaintiff gave no notice at all—to the individual officers prior to filing this suit. As such, "Plaintiff's claims against all individual officers are barred based on a straightforward failure to comply with the notice of claim statute." *Boss v. Unknown Parties*, No. CV-14-02344-PHX-ROS, 2015 WL 12592106, at *2 (D. Ariz. Oct. 19, 2015). All told, Plaintiff failed to state a claim upon which relief may be granted for Counts Three through Six with respect to Defendant Officers and Defendant Does, and the Court finds that leave to amend would be futile.

### i. Defendant Chandler's Vicarious Liability

Under Arizona law, municipal responsibility arises from vicarious liability. *Crick v. City of Globe*, 606 F. Supp. 3d 912, 918 (D. Ariz. 2022). While an employee's exoneration would typically preclude an employer's vicarious liability, "dismissing a claim against an employee for reasons that did not exonerate the employee from wrongdoing [does not require] the court to also dismiss a claim against the employer under the doctrine of respondeat superior." *Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 528 P.3d 139, 145 (2023). Dismissal of a claim with prejudice based on a failure to comply with A.R.S. § 12-821.01(A) does not exonerate an employee defendant from the claim and does not necessarily bar a vicarious liability claim against the employee's employer. *See*

*generally id.* at 141. Moreover, a plaintiff is not required to serve a notice of claim on an employee to pursue a claim against its employer. *Id.* at 148; *Moore v. Arizona*, No. CV 22-01938-PHX-JAT (JFM), 2024 WL 2699939, at *3 (D. Ariz. May 24, 2024). Therefore, Plaintiff's failure to serve the individual Officers the Notice of Claim does not prevent Plaintiff from pursuing or require dismissal of the claims against Defendant Chandler. The Court will analyze whether Plaintiff's state law claims against Defendant Chandler are subject to dismissal on the merits or other procedural grounds below.

### a. Negligent Wrongful Death

A.R.S. § 12-611 provides a cause of action "[w]hen death of a person is caused by wrongful act, neglect or default." Plaintiff brings two claims—Negligent Wrongful Death and Intentional Wrongful Death—against all Defendants under A.R.S. § 12-611. (Doc. 27 at 9–10). Plaintiff alleges that the Officers breached a duty of care owed to Plaintiff and Decedent through their negligent and intentional acts and omissions, and that Defendant Chandler is vicariously liable for these wrongful acts and omissions. (*Id.* at 10–11). Defendants argue that these claims must be dismissed because under Arizona state law, claims for negligence arising out of the intentional use of force are barred. (Doc. 29 at 12).

Defendants correctly assert that the Arizona Supreme Court has held that negligence claims cannot be based solely on an officer's intentional use of force. *See Ryan v. Napier*, 425 P.3d 230, 233 (2018). Here, Plaintiff alleges no negligent conduct by the officers that harmed Decedent independent of the use of force. *See Harris v. City of Phoenix*, No. 22-16307, 2023 WL 6635077, at *1 (9th Cir. 2023). It is undisputed that Officer Buchanan intentionally shot Decedent, leading to his death. (Doc. 27 at 6).

In her Response, Plaintiff argues that the negligence claim "is not just based on Buchanan's intentional conduct. The negligence claim is based on the officers' tactical errors . . . [that] necessitated shooting Ring." (Doc. 33 at 9). It is unclear whether this argument refers to Count Three (Negligent Wrongful Death), Count Five (Negligence), or both. To the extent that Plaintiff argues that Defendant Officers' tactical errors support the Negligent Wrongful Death claim, this Court is unconvinced. The Arizona Supreme Court

has refused to recognize negligence liability resulting "from a law enforcement officer's 'evaluation' of whether to intentionally use force against another person." *Ryan*, 425 P.3d at 236. "A negligence claim requires 'an act' or a 'failure to act.'" *Id*. "An actor's internal evaluation about whether to use force and the decision to do so are not 'acts' and therefore cannot, by themselves, constitute negligence." *Id*. at 237*; see also Weber v. City of Kingman*, No. 1 CA-CV 21-0063, 2022 WL 1468246, at *2–3 (Ariz. Ct. App. 2022) (finding that negligence wrongful death claims based on pre-shooting tactical decisions and failure to engage in de-escalation techniques are barred). Thus, Defendant Officers' evaluations and tactical decisions on how to handle the incident leading up to the shooting cannot alone constitute negligence.

Because no cognizable legal theory supports Plaintiff's Negligent Wrongful Death claim, Defendant Chandler cannot be held vicariously liable. *See Laurence*, 528 P.3d at 150 ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior."). As no additional facts could support a plausible claim, the Court finds leave to amend would be futile. Count Three is dismissed with prejudice against Defendant Chandler.

### b.  Intentional Wrongful Death

Plaintiff's second claim under A.R.S. § 12-611, Intentional Wrongful Death, closely mirrors her Negligent Wrongful Death Claim. Plaintiff alleges that Defendants breached various duties of care owed to Plaintiff through their intentional use of excessive force, and that Defendant Chandler is vicariously liable for the Defendant Officers' actions. (Doc. 27 at 11). Defendants request the Court interpret Count Four (Intentional Wrongful Death) as barred under the same legal theory that dooms Plaintiff's Negligent Wrongful Death claim, because despite its "intentional" label, it is based on negligence elements such as duty and breach of care. (Doc. 29 at 13). Defendants are correct that intentional tort claims do not require proof of duty, breach, or a causal connection between breach and the alleged injury, and instead require a showing of tortious intent. *Ryan*, 425 P.3d at 235.

"A wrongful death claim is not itself a theory of liability." *Harris v. Phoenix*, No. CV-20-00078-PHX-DLR, 2021 WL 4942662, at *2 (D. Ariz. Oct. 22, 2021) (cleaned up). "[I]n cases advancing claims based 'solely on an officer's intentional use of physical force,' a plaintiff may only advance a theory of intentional use of force." *Id.* (citations omitted). Courts have found that in Arizona, an allegation that a police officer unjustifiably shot a decedent is a theory of intentional force akin to aggravated assault, a criminal felony. *Id.*; *see also Betancourt v. City of Phoenix*, No. 1 CA-CV 16-0361, 2017 WL 5586533, at *4 (Ariz. Ct. App. 2017). In order for a public entity to be liable for an employee's intentional use of force, it must actually know of the employee's propensity to commit that particular act. *Harris*, 2021 WL 4942662, at *1; *see also* A.R.S. § 12-820.05(B) ("A public entity is not liable for losses that arise out of and are directly attributable to an act or omission determined by a court to be a criminal felony by a public employee unless the public entity knew of the public employee's propensity for that action.").

Here, Plaintiff does not allege any facts in the SAC that Defendant Chandler had any actual knowledge that Officer Buchanan had a propensity for aggravated assault or to otherwise wrongfully shoot or engage in excessive force. In her Response to the present Motion, Plaintiff argues that "[i]t stands to reason that City might have prior knowledge of Buchanan's or other officer's propensities to shoot." (Doc. 33 at 10). This statement is too conclusory to warrant a favorable inference that Defendant Chandler had actual knowledge and was on notice that Officer Buchanan specifically had such a propensity. The Court will dismiss Count Four against Defendant Chandler and grant Plaintiff leave to amend.

### c. Negligence

Count Five (Negligence) argues that the Officers breached a duty to use reasonable judgment while interacting with Decedent and refusing to treat Decedent's gunshot wounds, and further, that Defendant Chandler is vicariously liable for the Officers' actions. (Doc. 27 at 12–13). Defendants interpret this common law claim to be an attempted survival action under A.R.S. § 14-3110, and in doing so, argue that Count Five should fail because Plaintiff did not allege these claims as the personal representative of the estate and

18

because Plaintiff does not seek recoverable damages. (Doc. 29 at 12).

Arizona's survival statute, A.R.S. § 14-3110, allows a decedent's estate to bring claims on behalf of the decedent. *Manion v. Ameri-Can Freight Sys. Inc.*, 391 F. Supp. 3d 888, 892 (D. Ariz. 2019). Only the personal representative of a decedent's estate can use the survival statute as a vehicle to bring claims the decedent could have themselves brought if not for their death. *Bd. of Tr. of Sw. Carpenters Health & Welfare Tr. v. Jackson*, No. CV-22-01781-PHX-SMM, 2023 WL 4488978, at *3 (D. Ariz. July 12, 2023).

It is unclear whether Plaintiff intended Count Five to be a survival action; Plaintiff's SAC shows that she brings Count Five "as successor in interest to decedent," but there is no mention of A.R.S. § 14-3110—the requisite foundation for bringing a claim on behalf of Decedent—in her claim. (Doc. 27 at 12). Plaintiff's only mention of the statute can be found in the damages section of the SAC, where she states that she is "entitled to recover wrongful death damages" under the statute. (*Id.* at 6). In her Response, Plaintiff argues that she can bring a survival action under A.R.S. § 14-3110 because she intends to substitute as the proper estate representative. (Doc. 33 at 8). However, Plaintiff fails to explain within the four corners of the SAC or the responsive briefing to this Motion whether she intends to bring her claim for "Negligence" pursuant to A.R.S. § 14-3110 or how she otherwise has standing to bring a claim for "Negligence." In the event Plaintiff intended to bring the Negligence claim as a survival action on behalf of Decedent, the Court does not find Plaintiff's argument persuasive. As noted above, Plaintiff has yet to plead that she is the proper estate representative. Thus, Plaintiff lacks standing to bring a survival action for any claims on behalf of Decedent, and her claims must be dismissed.

Even if Plaintiff amends her Complaint to properly assert standing to bring a survival action, Defendants argue that there can be no survival action because there are no recoverable damages. (Doc. 29 at 12). It is well-settled that in Arizona, a survival action only provides for recovery of damages sustained by the deceased party from the time of accident until his death. *Barragan v. Superior Ct. of Pima Cnty.*, 470 P.2d 722, 724 (Ariz. Ct. App. 1970). Plaintiff argues that survival actions allow for the recovery of damages

such as lost wages, funeral expenses, burial expenses, and punitive damages. (Doc. 33 at 8).

The Court disagrees. The Ninth Circuit declined to find that the Arizona survival statute provides for recovery of a decedent's future loss of earnings, noting:

> Although the Arizona Supreme Court has not addressed whether Arizona's survival statute allows recovery of future economic damages, several Arizona Court of Appeals cases have held that the survival statute only allows for damages that accrued before death, and the Arizona Supreme Court has recently declined to review two of those decisions.

*See Matus v. Kustom US, Inc.*, No. 23-16134, 2024 WL 3688728, at *1 (9th Cir. 2024). Thus, Plaintiff cannot recover any of Decedent's future lost wages. Furthermore, funeral and burial expenses are not accrued until after an individual's death. Such expenses are therefore categorically excluded from recovery under the survival statute. Lastly, A.R.S. § 12-280.04 provides that "[n]either a public entity nor a public employee acting within the scope of his employment is liable for punitive or exemplary damages." Therefore, Plaintiff cannot recover punitive damages under the survival statute.

The Court finds that even if Plaintiff amends her Complaint to properly assert standing under Arizona's survival statute and provide additional facts, she will still be unable to state a claim upon which relief may be granted. Count Five will be dismissed with prejudice.

### d. Assault/Battery in Violation of A.R.S. §§ 13-20 and 13-1203(A)(1)

Plaintiff's Count Six alleges that Defendant Officers violated A.R.S. §§ 13-20 and 13-1203(A)(1) by placing Decedent "in immediate fear of death and severe bodily harm by battering and shooting him without any just provocation or cause" and that Defendant Chandler is vicariously liable. (Doc. 27 at 13). Defendants argue that Defendant Chandler is immune from liability on the assault and battery claim under A.R.S. § 12-820.05(B). (Doc. 29 at 14–15). Defendants argue that the claims are premised on losses resulting from Defendant Buchanan's shooting of Decedent, which constitutes at minimum felony

aggravated assaulted when viewing the allegations in the light most favorable to the non-moving party. (*Id*. at 15). As Plaintiff failed to allege that Defendant Chandler had actual knowledge of Defendant Buchanan's propensity for felony aggravated assault, Defendants argue that Plaintiff's claim is doomed. (*Id*. at 16). Plaintiff counters, as noted above, that Defendant Chandler "might have prior knowledge of Buchanan's or other officer's propensities to shoot" and thus Defendant Chandler should still be held vicariously liable under A.R.S. § 12-820.05(B). (Doc. 33 at 10).

This claim fails for several reasons. Similarly to Plaintiff's Negligence claim, it is unclear whether Plaintiff intends to bring this claim as a survival action pursuant to A.R.S. § 14-3110 or—as the parties seem to argue in this Motion's briefing—as a theory of intentional use of force to advance an Intentional Wrongful Death claim in her own capacity. To the extent that Plaintiff seeks to bring this claim as a survival action, Plaintiff fails to allege recoverable damages—as discussed above in the Court's dismissal of Count Five—which warrants dismissal with prejudice.

To the extent that Plaintiff seeks to bring this claim as a theory of intentional force to advance a wrongful death claim, Plaintiff fails to sufficiently state a claim upon which relief may be granted. First, A.R.S. § 13-20 does not exist. Second, while A.R.S. § 13-1203 codifies assault as a criminal misdemeanor, Plaintiff does not contest Defendants' assertion that the Court should interpret Count Six as a claim for felony aggravated assault underlying an intentional wrongful death claim subject to analysis under A.R.S. § 12-820.05(B). (Doc. 29 at 14–15; Doc. 33 at 10). However, the Court declines to do so, because Plaintiff's SAC does not seek to bring this "Assault/Battery" claim as a wrongful death claim, Plaintiff already brings an Intentional Wrongful Death claim based on the Defendants' same conduct in Count Four, and the Court already applied an A.R.S. § 12-820.05(B) analysis to Plaintiff's Count Four.

If Plaintiff intended to bring Count Six under a vehicle other than a survival or wrongful death action, the Court cannot determine that from the SAC. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th

Cir. 1991). "Nor are they archaeologists searching for treasure." *Jeralds v. Astrue*, 754 F.Supp.2d 984, 985 n.1 (N.D. Ill. 2010). Defendant's Motion to Dismiss Count Six against Defendant Chandler is granted. Because the Court cannot determine what theory of standing Plaintiff brings this claim under, the Court cannot determine whether amendment will be futile. The Court will therefore give Plaintiff the opportunity to amend the SAC.

### E. Defendants Does 1–50

Lastly, Defendants argue that Plaintiff's naming of "John and Jane Doe" Defendants is inconsistent with the Federal Rules of Civil Procedure and thus all "Doe" Defendants should be dismissed. (Doc. 29 at 16). Fictitious defendants are not favored in federal court as a general rule. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). "[T]he plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

Here, Plaintiff's SAC alleges that she is ignorant of the true names and capacities of Defendant Does. (Doc. 27 at 4). Plaintiff's Response to the present Motion indicates that while Plaintiff "did not know the true or exact names or roles of all the defendants. Plaintiffs now have more information about the true defendants." (Doc. 33 at 11). It is unclear whether Plaintiff intends to concede that all Defendant Does have been identified since the filing of her Complaint or to argue that discovery is needed to uncover the identities of additional unidentified parties. As such, the Court will grant Plaintiff leave to amend Counts One and Two to either substitute parties or withdraw the claims against Defendant Does. As noted above, Plaintiff's state law claims fail against Defendant Does because Plaintiff failed to identify or serve her Notice of Claim on those Defendants. Thus, the Court has already deemed it appropriate to dismiss Counts Three through Six against Defendant Does with prejudice.

### IV.    CONCLUSION

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiff only needs to allege enough facts to "plausibly give rise to an entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Therefore, the Amended Complaint fails to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary. Some of Plaintiff's claims cannot be cured with further amendment and are thus futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."). Specifically, Plaintiff's Count Two against Defendants Deanda, Figley, Prendergast, and Wagner; Counts Three, Four, Five, and Six against Defendants Buchanan, Deanda, Figley, Prendergast, Wagner, and Defendant Does 1–50; and Counts Three and Five against Defendant Chandler are dismissed in their entirety. These theories are barred as a matter of law and leave to amend these counts would be inappropriate. However, Plaintiff will be granted leave to amend Counts One through Six to cure the other deficiencies identified by the Court throughout this Order.

Accordingly,

**IT IS ORDERED** that Defendants Motion to Dismiss (Doc. 29) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Count One against Defendants Buchanan, Deanda, Figley, Prendergast, Wagner, and Does 1–50; Count Two against Defendants Buchanan and Does 1–50; and Counts Four and Six against Defendant City of Chandler are **dismissed without prejudice and with leave to amend** to correct the deficiencies identified in this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Count Two against Defendants Deanda, Figley, Prendergast, and Wagner; Counts Three, Four, Five, and Six against Defendants Buchanan, Deanda, Figley, Prendergast, Wagner, and Defendant Does 1–50; and Counts Three and Five against Defendant City of Chandler are **dismissed with**

**prejudice and without leave to amend.**

       **IT IS FURTHER ORDERED** that Plaintiff may file an amended complaint no later than **February 18, 2024.**

       **IT IS ORDERED** that Defendants' request for judicial notice is **granted in part and denied in part.** The Court will take judicial notice of Exhibit 5 only.

       Dated this 21st day of January, 2025.


Honorable Steven P. Logan
United States District Judge